[No. 4648.  Decided January 11, 1904.]

*In the Matter of the Estate of* MICHAEL LLOYD, *Deceased.*[1]

ELLEN LLOYD, *Appellant,* v. JOHN LLOYD, *Administrator, Respondent.*[1]

HOMESTEAD—EXEMPTION—ADMINISTRATOR'S APPLICATION TO SELL REAL ESTATE TO PAY DEBTS—SELECTION FROM HUSBAND'S SEPARATE PROPERTY—DESCENT OF HOMESTEAD—RIGHTS OF WIDOW. Where an administrator makes application to sell, for the purpose of paying the debts of the estate, the real estate occupied, but not selected, by the deceased as a homestead, alleging that the same was his separate property, and the widow attempts to select the same as a homestead after the death of the husband, and, contests the application, the separate character of the property is in issue and should be determined, since the widow can not select a permanent homestead from the unselected separate

1Reported in 74 Pac. 1061.

estate of her husband to the exclusion of the other heirs, but the same descends to the heirs at law, under Bal. Code, §§ 5246, 6219 and 6222.

SAME.    While such matter is more properly determined upon the final distribution of the estate, the appellant's claim of a homestead in the premises makes it proper to determine the same upon the application to sell the real estate.

SAME—VALUE OF HOMESTEAD—PRIOR EX PARTE APPRAISEMENT NOT RES ADJUDICATA. Upon an administrator's application to sell the deceased husband's real estate to pay the debts of the estate, contested by the widow, who selected and claimed the same as a homestead, a prior ex parte appraisement of the same at $2,000, and an order setting the same aside as the homestead of the widow and minor child during the administration are not *res adjudicata* of the value thereof or of the question of the exemption of the same from the debts of the estate.

SAME—SELECTION BY WIDOW—AMOUNT OF EXEMPTION—ORDER TO SELL REAL ESTATE TO PAY DEBTS WHERE VALUE OF HOMESTEAD IS $3,000—CONTEST.    Upon an application to sell all of the real estate of deceased to pay debts, which was separate property and which was occupied by him and is claimed by the widow as a homestead, it is proper to order the sale where the court finds upon ample testimony that it is of the value of $3,000, since the selection and claim by the widow after the husband's death does not effect the exclusion of the creditors, regardless of the actual value, but the same descends to the heirs subject to the lawful rights of creditors and all parties interested, in the regular course of administration.

Appeal from order of the superior court for Skagit county, Joiner, J., entered December 17, 1902, upon findings of fact and conclusions of law rendered in favor of the administrator, after a hearing upon the merits upon his final account and petition to sell real estate to pay debts.    Affirmed.

*Martin J. Lund,* for appellant, contended *inter alia,* that the widow may select a homestead from the separate property of the husband after his death.    Bal. Code, §§ 5215, 5246, 6219; *McMillan v. Mau,* 1 Wash. 26, 23 Pac. 441; *In re Feas' Estate,* 30 Wash. 51, 70 Pac. 270; *Brooks v.*

*Johns,* 119 Ala. 412, 24 South. 345; *Keyes v. Cyrus,* 100 Cal. 322, 34 Pac. 722, 38 Am. St. 296; *Matter of Noah,* 73 Cal. 590, 15 Pac. 290, 2 Am. St. 834; *Kearney v. Kearney,* 72 Cal. 591, 15 Pac. 769; *Smith v. McDonald,* 95 N. C. 163; *Bridwell v. Bridwell,* 76 Ga. 627; *Matter of Armstrong,* 80 Cal. 71, 22 Pac. 79; *Matter of Lamb,* 95 Cal. 397, 30 Pac. 568; *Lord v. Lord,* 65 Cal. 84, 3 Pac. 96; *Mawson v. Mawson,* 50 Cal. 541.

*Thomas Smith,* for respondent.

PER CURIAM.—This is an appeal by Ellen Lloyd, widow of deceased Michael Lloyd, from an order made by the superior court of Skagit county on December 17th, 1902, for the sale of the real estate of deceased, on petition of John Lloyd, administrator of said estate. Michael Lloyd died intestate on July 1st, 1901, in Skagit county, leaving appellant, Ellen Lloyd, as his widow, and three sons by a former marriage, William, Leo, and Chester Lloyd, the latter being a minor. There was no issue of the marriage between deceased and appellant. The land in question was set over to deceased, prior to his marriage with appellant, by a decree of the superior court of Skagit county, entered in a divorce ·suit between his former wife and himself. At the time of the decease of Michael Lloyd, and for some time prior thereto, he and appellant occupied these premises as their home. No declaration of homestead therein was ever made and filed in the auditor's office of Skagit county, by either spouse, during the life-time of Michael Lloyd.

On July 22nd, 1901, respondent, John Lloyd, was duly appointed administrator of such estate, and thereupon duly qualified in that behalf, and entered upon the duties of his trust. The personalty and realty of deceased were regularly inventoried and appraised. The appraisement of

this real estate was fixed at $2,000, which comprised all
the realty of said estate.    On the 20th day of January,
1902, the superior court made an order setting aside, as
the home and homestead of ·appellant and minor Chester
Lloyd, the possession of the above premises, during the
administration of the estate, and also to appellant, an al-
lowance of $20 per month until the further order of the
court.

On August 11th, 1902, the administrator, John Lloyd,
filed his final account and petition for the sale of such real
estate.    Upon his final account and petition, notice and
order to show· cause issued October· 1st, 1902, why such
account should not be approved and the prayer of the peti-
tion be granted, and the time of the hearing thereof was
set for November 10th, 1902.    On that day the appellant
and the children of deceased appeared, and filed their
objections and answers, in writing, and were represented
by counsel.

The appellant objected to the proposed sale of the real
estate, alleging, that the same is her homestead, on which
she resides with her three minor children, who are de-
pendent on her for support; that said premises were regu-
larly set aside by the court as her homestead; that the
value thereof does not exceed $2,000; that "said premises
were, during the lifetime of said deceased, his home and
the home of his family, and, as such, were exempt from
execution;" that there is a mortgage thereon for $350, with
interest and taxes due.    She prayed that the petition to
sell be denied, and that the administrator be ordered to
pay the mortgage indebtedness and taxes as preferred
claims.

Witnesses were examined, and the court heard other evi-
dence.    It appeared, that the children, to whom appellant
referred, were hers by a former deceased husband; that

the claims on the mortgage indebtedness and for taxes had not been filed, or presented to the administrator, or to the court. Testimony was also heard as to the condition of the estate, the value and situation of this real estate, the items and allegations in the final account and petition, and with reference to appellant's objections. There is attached to the statement of facts a copy of a written declaration of homestead of the above premises, filed in the county auditor's office of Skagit county January 20, 1902.

On December 17, 1902, the court made its findings of fact and conclusions of law in the above matter, finding, among other things, that this real estate can be sold for, and is of the value of, about $3,000, and consists of farming land, containing about 63 acres; that the personalty had been exhausted in the course of administration; that there were outstanding claims against the estate amounting to $221.91, besides the mortgage debt of $350, and interest, and about $100 unpaid taxes on this realty, and certain costs and expenses connected with the administration and settlement of the estate; that there was only a balance of $289.50 in the hands of the administrator with which to liquidate these demands, taxes, and expenses; that the realty was the separate property of deceased, and was all that remained for such purposes. An order was made and entered of that date approving the account of the administrator, and directing him to sell the realty at public auction.

The appellant's counsel makes two contentions in his brief: (1) That the court erred in forcing the appellant to litigate the question as to whether this real estate was the separate property of deceased, or the community property of the estate; and (2) that this realty was the homestead of appellant and her family, and the court erred in granting the order of sale. The transcript shows that

there was a direct allegation in the petition that this real
estate was the separate property of deceased, which the
appellant contested by her written objections.    Such issue
having been tendered, the superior court was required to
pass upon that question.    The facts and testimony which
appear in the record amply justify the finding that it was
the separate property of the deceased.    The appraisement
and valuation of the realty at $2,000, and the granting of
the widow and the minor child of deceased the possession
during the progress of the administration of the estate, did
not have the force or effect of *res adjudicata,* so as to estop
the administrator from proceeding, under the direction of
the court, to sell this property in order to subserve the best
interests of the estate and all the parties interested therein,
according to the provisions of the statute in such cases.
The most that appellant could claim, in any event, was
the possession of the premises for herself and Chester, the
minor, until the final settlement of the estate.    The court
could not, and evidently did not, intend, on a mere *ex
parte* application, to make a final determination as to the
title or homestead feature of the property in question, to
the prejudice of the other heirs and the creditors of the
estate.

In *In re Kruger's Estate,* 55 Pac. 1056, the supreme
court of California, in considering the question of orders
made in probate proceedings, on *ex parte* applications, by
which the property and rights of the parties interested in
an estate are affected, uses this language:    "It cannot re-
quire the citation of authority in support of the proposition
that one may not thus be deprived of his property without
process of law."    The appraisement of this realty was, at
most, only prima facie evidence of its value.    The evidence
adduced at the hearing on the petition was amply sufficient
to justify the finding of the court that the value of this real

estate was about $3,000. This issue was squarely presented for the court's determination at this hearing. The appellant made no objection as to the method of procedure regarding such finding, and is, therefore, in no position to complain of the court's action in that regard.

The case of *Austin v. Clifford,* 24 Wash. 172, 64 Pac. 155, was, in some respects, similar to the matter at bar, except there was no question as to the rights of creditors of the estate presented to the court. The court held, in the matter of the distribution of the real estate, that, under the provisions of §§ 6219 and 6222, taken in connection with §5246 of Bal. Code, the widow for herself and minor child could not claim any permanent homestead in the premises which was the separate property of the deceased husband at the time of his death; that the realty vested in the heirs at law of decedent. The court remarked, regarding the interpretation of these sections: "They exempt such homestead from the payment of any debts, whether community or individual, and authorize the court to set aside the use thereof, for a limited period, to the family of deceased." This language was used with reference to the facts of the particular case decided. The court held that the widow could not lawfully claim the fee in the homestead, "irrespective of the claims of other heirs."

The children of decedent, Michael Lloyd, are making claims to this property adverse to the contentions of appellant. Ordinarily such issues would properly arise when the question of the distribution shall come up in the regular course of administration, but as they seem to be so inseparably interwoven with appellant's homestead claim in the premises, on the hearing of this appeal, at the risk of anticipating, we feel impelled to consider some of their features in this connection. The logic of the opinion in the case of *Austin v. Clifford, supra,* shows plainly that, under the

facts as stated therein, the widow had no permanent homestead rights or estate in the deceased husband's property; that it descended to his heirs at law, including the widow.

Applying this rule to the proceedings at bar, it must necessarily follow that the realty in question, on the death of Michael Lloyd, vested in his lawful heirs, subject to the lawful rights and claims of creditors, and all parties interested, in the regular course of administration. See, further, *Stewin v. Thrift,* 30 Wash. 36, 70 Pac. 116. If the contentions of appellant's counsel be correct, no matter how valuable the homestead of decedent may be, it must go to his widow or children, to the exclusion of the rights of his creditors. This would have the effect of enlarging the homestead rights of the widow and children, by reason of the death of the husband. We cannot give our statutes on this subject any such forced construction. The filing of appellant's homestead declaration after the death of her husband can have no such effect. Section 5246, *supra,* refers to the selection of the homestead, made prior to the death of either spouse.

The cases from California cited *contra* have no application. The statute of the state provides, if no homestead has been selected, designated, and recorded during the lifetime of the deceased, "the court must select, designate, and set apart, and cause to be recorded, a homestead for the use of the surviving husband or wife, and the minor children, . . . out of the common property, or if there be no common property, then out of the real estate belonging to the deceased." There is no such provision in our laws. The authorities from other states, to which we have been referred by appellant's counsel, seem to fall in the same class as the California decisions, and show that the right to a permanent homestead can only exist .in, and be set apart from, the deceased husband's or wife's separate prop-

erty when no selection shall have been made in the lifetime of the deceased spouse, by a court exercising probate powers and jurisdiction under some statutory enactment conferring such authority, which is wanting in the proceedings at bar.

No reversible error appearing in the record, the order appealed from must be affirmed, and it is so ordered.